DLM

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

DD IP HOLDER LLC,

Plaintiff,

v.

EARL STICKNEY, CATHY STICKNEY, KARL AUGHINBAUGH AND XYZ, INC.,

Defendants.

CIVIL ACTION NO. ___________

CA 07 201 ML

**VERIFIED COMPLAINT**
**FOR INJUNCTIVE RELIEF, TRADEMARK INFRINGEMENT,**
**TRADEMARK DILUTION AND UNFAIR COMPETITION**

Plaintiff DD IP Holder, LLC ("Dunkin'") avers for its Verified Complaint for Injunctive Relief, Trademark Infringement, Trademark Dilution and Unfair Competition against Defendants Earl Stickney, Cathy Stickney, Karl Aughinbaugh, and XYZ, Inc. as follows:

**NATURE OF THE ACTION**

1. This action is brought pursuant to the Federal Trademark Act, 15 U.S.C. § 1051, *et seq.*, to prevent Earl Stickney, Cathy Stickney, owners and/or operators of a Shell gasoline station franchise in North Kingston, Rhode Island, and Karl Aughinbaugh, manager of the Shell gasoline station franchise, from illegally and unlawfully using and diluting Dunkin's trademarks, trade dress, service marks and trade names. Dunkin' also seeks to recover from Defendants damages from the unauthorized use of Dunkin's intellectual property.

**PARTIES**

2. Plaintiff DD IP Holder LLC ("Dunkin'") is a Delaware limited liability company with its principal place of business in Canton, Massachusetts. Dunkin' is the successor in

interest to Dunkin' Donuts USA, Inc. and is the owner of the word mark, "DUNKIN' DONUTS" and associated goodwill.

3. Upon information and belief, Defendant Earl Stickney and Defendant Cathy Stickney (collectively the "Stickneys") are natural persons and citizens of the State of Florida. Upon information and belief, the Stickneys are the owners, either directly or through a corporate entity they control, of a Shell gasoline station franchise located at 10 Ten Rod Road, North Kingston, Rhode Island ("Infringing Location"). The Stickneys have sufficient minimum contacts with Rhode Island to be subject to the jurisdiction of this Court.

4. Upon information and belief, Defendant XYZ, Inc. ("XYZ") is a corporate entity owned and/or controlled by the Stickneys through which they operate the Infringing Location. XYZ has sufficient minimum contacts with Rhode Island to be subject to the jurisdiction of this Court.

5. Upon information and belief, Defendant Karl Aughinbaugh ("Mr. Aughinbaugh") is a resident of Rhode Island, resides at 511 Tripps Corner Road, Exeter, Rhode Island, and maintains a business address of 10 Ten Rod Road, North Kingston, Rhode Island. Upon information and belief, Mr. Aughinbaugh is the day-to-day manager of the Infringing Location. Mr. Aughinbaugh has sufficient minimum contacts with Rhode Island to be subject to the jurisdiction of this Court.

**JURISDICTION AND VENUE**

6. This case arises under an Act of Congress relating to trademarks, 15 U.S.C. § 1051, *et seq.* Accordingly, the Court has original jurisdiction pursuant to 28 U.S.C. § 1338. Under principles of supplemental jurisdiction, the Court also has jurisdiction of all claims against Defendants arising solely under state law.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Dunkin's claims occurred and continues to occur in this judicial district. Specifically, Defendants are improperly using and diluting Dunkin's registered trademarks in connection with the unauthorized operation of a Dunkin' Donuts location in Rhode Island and Defendants continue to unlawfully use Dunkin's trademarks within Rhode Island.

## FACTS

### A. THE DUNKIN' MARKS

8. Dunkin' Donuts® is one of the largest quick service restaurant franchise systems in the United States and throughout the world, and is widely known as one of the leading franchise systems in the United States and throughout the world.

9. Dunkin's trademarks, service marks and logos (together the "Dunkin' Marks") are on the principal register of the United States Patent and Trademark Office. Dunkin' has the exclusive right to use and to license the Dunkin' Marks and derivations thereof, as well as the distinctive Dunkin' System, which provides a system for operating quick service restaurants featuring coffee, pastries and breakfast sandwiches under the Dunkin' Donuts® name. Dunkin' and its predecessors have continuously used each of the Dunkin' Marks since the date of their registration.

10. Those registrations are in full force and effect, unrevoked, uncancelled, and incontestable pursuant to 15 U.S.C. § 1065.

11. Dunkin' has given notice to the public of the registration of its trademarks and service marks as provided in 15 U.S.C. § 1111.

12. Dunkin' uses or has used the Dunkin' Marks as abbreviations of its brand name.

13. Through its franchise system, Dunkin' and its affiliated entities market, promote and provide services to franchisees throughout the United States. In order to identify the origin of the coffee, pastries and breakfast sandwiches sold by its franchisees, Dunkin' and its affiliated entities allows franchisees to utilize the Dunkin' Marks.

14. Dunkin' has invested substantial effort over a long period of time, including the expenditure of millions of dollars, to develop goodwill in its trade names and trademarks to cause consumers throughout the United States to recognize the Dunkin' Marks as distinctly designating Dunkin's products, including coffee, pastries and breakfast sandwiches.

15. The value of the goodwill developed in the Dunkin' Marks does not admit of precise monetary calculation, but because Dunkin' Donuts® is one of the largest quick service restaurant franchise systems in the United States and worldwide and is widely known as a provider of quality coffee, pastries and breakfast sandwiches, the value of Dunkin's goodwill is in excess of one billion dollars.

16. The Dunkin' Marks are indisputably among the most famous trademarks in the United States and worldwide.

B. <u>DEFENDANTS' UNAUTHORIZED USE AND DISPLAY OF THE DUNKIN' MARKS IN COMMERCE</u>

17. On or about May 24, 2007, two employees of a Dunkin'-related entity, David Wilson and Edward Jay, observed the use and display of certain of the Dunkin' Marks at a Shell gasoline station franchise located at 10 Ten Rod Road, North Kingston, Rhode Island ("Infringing Location").

18. The Infringing Location is not a Dunkin' Donuts® franchise, is not authorized to use or display the Dunkin' Marks and has never been authorized to use or display the Dunkin' Marks.

19. Messrs. Wilson and Jay personally observed the use and display of the Dunkin' Marks at the Infringing Location in connection with the sale of brewed Dunkin' Donuts® coffee. Specifically, Messrs. Wilson and Jay observed signs on several gasoline pumps advertising the sale of brewed Dunkin' Donuts® hot and iced coffee utilizing the Dunkin' Marks and large display window advertising using the Dunkin' Marks. True and accurate copies of photographs Mr. Wilson took of the outside of the Infringing Location on May 24, 2007, are attached as Exhibit A.

20. Messrs. Wilson and Jay also observed the manager of the Infringing Location, Karl Aughinbaugh, painting the trim of the Infringing Location in Dunkin' Donuts'® colors.

21. Inside the gasoline station, Messrs. Wilson and Jay observed: (1) Dunkin' Donuts® travel mugs for sale; (2) Dunkin' Donuts® straws; (3) Dunkin' Donuts® napkins; (4) Dunkin' Donuts® tea bags; (5) additional signs containing the Dunkin' Marks; and (6) Krispy Kreme® donuts displayed and sold next to Dunkin' Donuts® brewed coffee. True and accurate copies of photographs Mr. Wilson took of the inside of the Infringing Location on May 24, 2007, are attached as Exhibit B.

22. While at the Infringing Location on May 24, 2007, Messrs. Wilson and Jay spoke with Mr. Aughinbaugh about the display of Dunkin' Marks and sale of Dunkin' Donuts® coffee. Mr. Aughinbaugh admitted that Defendants do not own an authorized Dunkin' Donuts franchise, but claimed that he purchased packaged bulk Dunkin' Donuts® coffee beans (whole or ground) at retail and therefore was entitled to sell coffee prepared from the coffee beans he purchased. Mr. Aughinbaugh refused to disclose how he obtained the display window advertising containing the Dunkin' Marks.

23. Contrary to Mr. Aughinbaugh's claim, the goods sold at the Shell station are materially different from the goods that he claims to have purchased at retail. By the sale of brewed coffee in connection with the display of Dunkin' Marks, Defendants offer a product that is materially changed from the form and quality of the Dunkin' Donuts® coffee beans they claim to have purchased in that Defendants' brewed coffee product does not meet Dunkin's established quality standards and is not subject to Dunkin's quality control.

24. While Messrs. Wilson and Jay spoke with Mr. Aughinbaugh, a customer entered the Infringing Location and attempted to redeem a Dunkin' Donuts coupon for iced coffee. When the customer was informed that the location was not a Dunkin' Donuts® shop and therefore could not accept the coupon, he looked at the coffee display and Dunkin' Marks on display and expressed confusion as to how the location was not an authorized Dunkin' Donuts® shop. Nonetheless, the customer purchased an iced coffee from the Infringing Location.

25. Prior to leaving the Infringing Location, Messrs. Wilson and Jay handed Mr. Aughinbaugh a Cease and Desist Letter demanding the immediate cessation of Dunkin' Donuts coffee sales and use of the Dunkin' Marks. A true and accurate copy of the Cease and Desist Letter is attached as Exhibit C.

26. Mr. Aughinbaugh stated that he would not stop selling Dunkin' Donuts® brewed coffee utilizing his method of preparing such coffee. A true and accurate copy of pictures taken after the delivery of the Cease and Desist Letter is attached at Exhibit D.

27. As demonstrated by Messrs. Wilson and Jay's observations on May 24, 2007, Defendants have, without authorization or license, continually used the Dunkin' Marks in connection with their operation of the Infringing Location. Attached as Exhibit E are additional photographs of the Infringing Location taken over the Memorial Day weekend.

28. Defendants' unauthorized operation of the Infringing Location using the Dunkin' Marks is continuing and there is no indication that such activity will cease without judicial intervention.

## COUNT I
## VIOLATION OF THE LANHAM ACT

29. Dunkin' repeats and makes a part hereof each and every averment set forth in paragraphs 1 through 28 of the Verified Complaint.

30. Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides in pertinent part that "[a]ny person who shall, without the consent of the registrant -- use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . ."

31. Defendants have marketed and promoted and continue to market and promote a Dunkin' Donuts® shop at the Infringing Location through the unauthorized use of the Dunkin' Marks, and such use has caused and is likely to continue to cause confusion or mistake among prospective or actual customers, in violation of Section 32 of the Lanham Act.

32. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation . . . or as to the origin, sponsorship, or approval of . . . goods [or] services . . . shall be liable in a civil action . . . ."

33. Defendants' acts of marketing and promoting the Infringing Location, through and with the Dunkin' Marks, constitutes:

(a) a false designation of origin;

(b) a false and misleading description of fact; and

(c) a false and misleading representation of fact;

that has caused and is likely to continue to cause confusion, or to cause mistake, or deception, as to the affiliation of the Infringing Location with Dunkin', and to cause confusion, or to cause mistake, or deception, to the effect that Dunkin' sponsors or approves of the coffee and/or goods that defendants are selling at the Infringing Location, all in violation of Section 43(a) of the Lanham Act.

34. Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), provides in pertinent part that "[t]he owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection."

35. Defendants' use of the Dunkin' Marks in connection with the operation of the Infringing Location, after the Dunkin' Marks became famous, has caused and will continue to cause dilution and disparagement of the distinctive quality of the Dunkin' Marks, and has lessened and will continue to lessen the capacity of the Dunkin' Marks to identify and distinguish the goods and services of Dunkin' Restaurants, all in violation of Section 43(c) of the Lanham Act.

36. Defendants' on-going acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act are malicious, fraudulent, willful, and deliberate.

37. Defendants' on-going acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act have inflicted and continue to inflict irreparable harm on Dunkin'.

38. Dunkin' has no adequate remedy at law.

39. No previous injunctive relief has been awarded with respect to this matter in this case or any other case.

**WHEREFORE**, pursuant to 15 U.S.C. §§ 1114, and 1125(a) and (c), Dunkin' demands judgment against Earl Stickney, Cathy Stickney, Karl Aughinbaugh, and XYZ, Inc.:

a. Temporarily, preliminarily and permanently restraining and enjoining Earl Stickney, Cathy Stickney, Karl Aughinbaugh and XYZ, Inc., their affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all those who act in concert or participation with them, from using and/or displaying the Dunkin' Marks and associated trade names, service marks, and trademarks in violation of the Lanham Act;

b. Temporarily, preliminarily and permanently restraining and enjoining Earl Stickney, Cathy Stickney, Karl Aughinbaugh and XYZ, Inc., their affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all those who act in concert or participation with them, from selling Dunkin' goods and/or services, including, without limitation, Dunkin' coffee in all forms and varieties and Dunkin' travel mugs; and

c. Ordering that Earl Stickney, Cathy Stickney, Karl Aughinbaugh and XYZ, Inc., their affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all those who act in concert or participation with them, account to Dunkin' for any and all profits derived

as a result of marketing or promoting goods or services at the Infringing Location or elsewhere through and with the Dunkin' Marks; and

d. Granting compensatory damages, treble damages, attorneys' fees, prejudgment interest, cost of suit, and such other and further relief as this Court shall deem just and proper.

## COUNT II
## UNJUST ENRICHMENT

40. Dunkin' repeats and makes a part hereof each and every averment contained in paragraphs 1 through 39 of the Verified Complaint.

41. Defendants have benefited from their wrongful use of the Dunkin' Marks and have paid no Royalty Fees or other fees to Dunkin' in return for this benefit.

42. Under the circumstances, as set forth above, it would be inequitable for Defendants to retain the benefit of the Dunkin' Marks without payment of the value thereof.

43. Therefore, Defendants' failure to compensate Dunkin' constitutes unjust enrichment and has damaged Dunkin'.

**WHEREFORE**, Dunkin' demands judgment against Earl Stickney, Cathy Stickney, Karl Aughinbaugh, and XYZ, Inc. for damages to compensate Dunkin' for the period during which Earl Stickney, Cathy Stickney, Karl Aughinbaugh and/or XYZ, Inc. have misused the Dunkin' Marks and were thereby unjustly enriched, together with interest and costs.

## COUNT III
## RHODE ISLAND DECEPTIVE TRADE PRACTICES ACT

44. Dunkin' repeats and makes a part hereof each and every averment contained in paragraphs 1 through 43 of the Verified Complaint.

45. Defendants have marketed and promoted and continue to market and promote a Dunkin' Donuts shop at the Infringing Location through the unauthorized use of the Dunkin'

Marks, and these actions, explained in detail above, constitute unfair or deceptive acts or trade practices in violation of the Rhode Island Deceptive Trade Practices Act, codified at R.I. Gen. Laws §§ 6-13.1-1, *et seq.*

**WHEREFORE**, pursuant to the Rhode Island Deceptive Trade Practices Act, Dunkin' demands judgment against Earl Stickney, Cathy Stickney, Karl Aughinbaugh and XYZ, Inc.:

a. Temporarily, preliminarily and permanently restraining and enjoining Earl Stickney, Cathy Stickney, Karl Aughinbaugh and XYZ, Inc., their affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all those who act in concert or participation with them, from using and/or displaying the Dunkin' Marks and associated trade names, service marks, and trademarks in violation of the Rhode Island Deceptive Trade Practices Act;

b. Temporarily, preliminarily and permanently restraining and enjoining Earl Stickney, Cathy Stickney, Karl Aughinbaugh and XYZ, Inc., their affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all those who act in concert or participation with them, from selling Dunkin' goods and/or services, including, without limitation, Dunkin' coffee in all forms and varieties and Dunkin' travel mugs; and

c. Ordering that Earl Stickney, Cathy Stickney, Karl Aughinbaugh and XYZ, Inc., their affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all those who act in concert or participation with them, account to Dunkin' for any and all profits derived as a result of marketing or promoting goods or services at the Infringing Location or elsewhere through and with the Dunkin' Marks; and

d. Granting compensatory damages, punitive damages, attorneys' fees, prejudgment interest, cost of suit, and such other and further relief as this Court shall deem just and proper.

Plaintiff,

DD IP HOLDER, LLC

By its attorney,

Jeffrey S. Brenner (#4369)
NIXON PEABODY LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel: (401) 454-1000
Fax: (401) 454-1030
E-mail: JBrenner@nixonpeabody.com

Dated: May 30, 2007

VERIFICATION

I, Edward S. Jay, Jr., a Loss Prevention Manager of DD IP Holder LLC, hereby state that I have read the foregoing Verified Complaint and am familiar with the contents thereof, and that the facts set forth therein are true by my own personal knowledge and in accordance with the business records of the company, except those facts set forth on information and belief, and that as to those allegations, I believe them to be true. I declare under penalty of perjury that the foregoing statements are true and correct.

Edward S. Jay, Jr.

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

Subscribed and sworn to before me this 30th day of May, 2007.

Notary Public
My commission expires: 9/17/09



10598019.2