UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

DD IP HOLDER LLC

Plaintiff,

v.

EARL STICKNEY, CATHY STICKNEY, KARL AUGHINBAUGH AND XYZ, INC.,

Defendants.

CIVIL ACTION NO. ____________

07 201ML

**PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

Plaintiff DD IP Holder, LLC ("Dunkin'") hereby moves this Court for entry of a temporary restraining order and/or preliminary injunction enjoining defendants Earl Stickney, Cathy Stickney, Karl Aughinbaugh and XYZ, Inc. (collectively "Defendants") from continuing to use and/or dilute Dunkin's trademarks, trade dress, service marks and trade names at the Shell gasoline station franchise located at 10 Ten Rod Road, North Kingston, Rhode Island, (the "Infringing Location"). Specifically, in accordance with Count I and Count III of the Verified Complaint, Dunkin' requests that this Court:

1. Enter a temporary restraining order and/or preliminary injunction prohibiting Defendants, their affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all those who act in concert or participation with them, from using and/or displaying the Dunkin' Marks (as defined in the Verified Complaint) and associated trade names, service marks, and trademarks in violation of the Lanham Act; and

2. Enter a temporary restraining order and/or preliminary injunction prohibiting Defendants, their affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all those who act in concert or participation with them, from selling Dunkin' goods and/or services, including, without limitation, Dunkin' coffee in all forms and varieties and Dunkin' travel mugs.

As grounds for this motion, Dunkin' refers this Court to the Verified Complaint and the Memorandum of Law in Support of Plaintiffs' Motion for a Temporary Restraining Order and/or Preliminary Injunction. As set forth in the Memorandum of Law, Plaintiff is likely to succeed on the merits of its claims against Defendants; will be irreparably harmed in the absence of a temporary restraining order and/or preliminary injunction, and the harm to plaintiffs if the requested injunction is not granted far exceeds any harm that Defendants will suffer if it is allowed.

Plaintiff,

DD IP HOLDER, LLC

By its attorneys,

Jeffrey S. Brenner (#4369)
NIXON PEABODY LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel: (401) 454-1000
Fax: (401) 454-1030
E-mail: JBrenner@nixonpeabody.com

Dated: May 30, 2007

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DD IP HOLDER LLC<br><br>Plaintiff,<br><br>v.<br><br>EARL STICKNEY, CATHY STICKNEY, KARL AUGHINBAUGH AND XYZ, INC.,<br><br>Defendants. | CIVIL ACTION NO. __________<br><br>07 201ML |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

Plaintiff DD IP Holder, LLC ("Dunkin'") submits this Memorandum of Law in Support of its Motion for a Temporary Restraining Order and/or Preliminary Injunction to enjoin Defendants Earl Stickney, Cathy Stickney, Karl Aughinbaugh, and XYZ, Inc. from their obvious and intentional infringement of Dunkin's valuable trademarks, trade names and service marks.

## INTRODUCTION

Dunkin' Donuts® is one of the largest quick service restaurant franchise systems in the United States and is widely known as one of the leading franchise systems throughout the world. Defendants are owners and/or operators of a Shell gasoline station franchise located at 10 Ten Rod Road, North Kingston, Rhode Island ("Infringing Location") who are utilizing Dunkin's federally registered trademarks, trade names and service marks in their operation of the Infringing Location. This unlawful use of Dunkin's intellectual property misleads the public into believing that Defendants have the authority to market and offer Dunkin' Donuts® goods and services as Dunkin' Donuts® franchisees. This ongoing deception also results in the public's mistaken belief that defendants' coffee shop is licensed by Dunkin' and subject to its quality controls.

Defendants continued unlawful operation undoubtedly infringes Dunkin's trademarks, trade names and service marks and causes Dunkin' severe and irreparable harm. Additionally, there is no dispute that Defendants' continued use of Dunkin's trade marks, trade names and service marks at the Infringing Location is without right or license. Only a temporary restraining order and/or preliminary injunction can ensure that Defendants will cease their ongoing misconduct and staunch the irreparable harm to Dunkin' from the public confusion caused by Defendants' infringement and the tarnishment of Dunkin's goodwill and business reputation.

## STATEMENT OF FACTS

A. Dunkin' and the Dunkin' Marks.

Dunkin' Donuts® is one of the largest quick service restaurant franchise systems in the United States, and is widely known as one of the leading franchise systems in the United States and throughout the world. (Verified Complaint ¶ 8). Dunkin's trademarks, service marks and logos (together the "Dunkin' Marks") are on the principal register of the United States Patent and Trademark Office. (Verified Complaint ¶ 9). Dunkin' has the exclusive right to use and to license the Dunkin' Marks and derivations thereof, as well as the distinctive Dunkin' System, which provides a system for operating restaurants featuring goods and services, including coffee, pastries and breakfast sandwiches under the Dunkin' Donuts name. Dunkin' and its predecessors have continuously used each of the Dunkin' Marks since the date of their registration. (Verified Complaint ¶ 9). Those registrations are in full force and effect, unrevoked, uncancelled, and incontestable pursuant to 15 U.S.C. § 1065. (Verified Complaint ¶ 10).

Dunkin' has given notice to the public of the registration of its trademarks and service marks as provided in 15 U.S.C. § 1111. (Verified Complaint ¶ 11). Dunkin' uses or has used the Dunkin' Marks as abbreviations of its brand name. (Verified Complaint ¶ 12). Through its

franchise system, Dunkin' and its affiliated entities market, promote and provide services to restaurant franchisees throughout the United States. In order to identify the origin of the goods and services sold by its franchisees, including coffee, pastries and breakfast sandwiches, Dunkin' and its affiliated entities allow franchisees to utilize the Dunkin' Marks. (Verified Complaint ¶ 13).

Dunkin' has invested substantial effort over a long period of time, including the expenditure of millions of dollars, to develop goodwill in its trade names and trademarks to cause consumers throughout the United States to recognize the Dunkin' Marks as distinctly designating Dunkin's goods and services, including its coffee, pastries and breakfast sandwiches. (Verified Complaint ¶ 14). The value of the goodwill developed in the Dunkin' Marks does not admit of precise monetary calculation, but because Dunkin' Donuts® is one of the largest worldwide quick service restaurant franchise systems and is widely known as a provider of quality coffee, pastries and breakfast sandwiches, the value of Dunkin's goodwill is in excess of one billion dollars. (Verified Complaint ¶ 15). Indeed, the Dunkin' Marks are among the most famous trademarks in the United States. (Verified Complaint ¶ 16).

B. Defendants' Unauthorized Use and Display of the Dunkin' Marks in Commerce.

On or about May 24, 2007, two employees of a Dunkin'-related entity, David Wilson and Edward S. Jay, Jr., observed the use and display of certain of the Dunkin' Marks at a Shell gasoline station franchise located at 10 Ten Rod Road, North Kingston, Rhode Island ("Infringing Location"). (Verified Complaint ¶ 17.) The Infringing Location is not a Dunkin' Donuts® franchise, is not authorized to use or display the Dunkin' Marks and has never been authorized to use or display the Dunkin' Marks. (Verified Complaint ¶ 18.)

As they approached the Infringing Location, Messrs. Wilson and Jay personally observed the use and display of the Dunkin' Marks in connection with the sale of brewed Dunkin'

Donuts® coffee. Specifically, Messrs. Wilson and Jay observed signs on several gasoline pumps advertising the sale of brewed Dunkin' Donuts® hot and iced coffee utilizing the Dunkin' Marks and large display window advertising using the Dunkin' Marks. (Verified Complaint ¶ 19; Verified Complaint Ex. A.) Messrs. Wilson and Jay also observed the manager of the Infringing Location, Karl Aughinbaugh, painting the trim of the Infringing Location in Dunkin' Donuts® colors. (Verified Complaint ¶ 20.)

Upon entering the Infringing Location, Messrs. Wilson and Jay observed: (1) Dunkin' Donuts® travel mugs for sale; (2) Dunkin' Donuts® straws; (3) Dunkin' Donuts® napkins; (4) Dunkin' Donuts® tea bags; (5) additional signs containing the Dunkin' Marks; and (6) Krispy Kreme® donuts displayed and sold next to alleged Dunkin' Donuts® brewed coffee. (Verified Complaint ¶ 21; Verified Complaint Ex. B.)

After observing the outside and inside of the Infringing Location, Messrs. Wilson and Jay spoke with Mr. Aughinbaugh about the display of the Dunkin' Marks and sale of Dunkin' Donuts® coffee. Mr. Aughinbaugh admitted that defendants do not own an authorized Dunkin' Donuts® franchise, but claimed that he purchased packaged bulk Dunkin' Donuts® coffee beans (whole or ground) at retail and therefore was entitled to sell coffee prepared from the coffee beans he purchased. Mr. Aughinbaugh refused, however, to disclose how he obtained the display window advertising containing the Dunkin' Marks. (Verified Complaint ¶ 22.)

While Messrs. Wilson and Jay spoke with Mr. Aughinbaugh, a customer entered the Infringing Location and attempted to redeem a Dunkin' Donuts® coupon for iced coffee. When the customer was informed that the location was not a Dunkin' Donuts® shop and therefore could not accept the coupon, he looked at the coffee display and Dunkin' Marks display and expressed

confusion as to how the location was not an authorized Dunkin' Donuts® shop. Nonetheless, the customer purchased an iced coffee from the Infringing Location. (Verified Complaint ¶ 24.)

Prior to leaving the Infringing Location, Messrs. Wilson and Jay handed Mr. Aughinbaugh a Cease and Desist Letter demanding the immediate cessation of Dunkin' Donuts® coffee sales and use of the Dunkin' Marks. (Verified complaint ¶ 25; Verified Complaint Ex. C.) Mr. Aughinbaugh responded that he would not stop selling Dunkin' Donuts® coffee. (Verified Complaint ¶ 26.)

Based on Messrs. Wilson and Jay's May 24, 2007, observations and the pictures they took evidencing their observations, it is clear that Defendants have, without authorization or license, continually used the Dunkin' Marks in connection with their unauthorized operation of the Infringing Location. It is also clear that Defendants' unauthorized operation of the Infringing Location using the Dunkin' Marks is continuing and there is no indication that such activity will cease without court intervention.

## ARGUMENT

### I. DUNKIN' SATISFIES THE REQUIREMENTS FOR THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION ENJOINING DEFENDANTS' UNLAWFUL INFRINGEMENT AND UNAUTHORIZED USE OF THE DUNKIN' MARKS.

In order to secure a temporary restraining order and/or preliminary injunction, Dunkin' must demonstrate that: (1) it is likely to succeed on the merits; (2) it will suffer irreparable harm in the absence of preliminary injunctive relief; (3) the public interest will not be adversely affected by the granting of the injunction; and (4) the injury to Dunkin' outweighs any harm which granting the injunction would inflict on Defendants. Concrete Machinery Co. v. Classic Lawn Ornaments, 843 F.2d 600, 611 (1st Cir. 1988). As demonstrated below, Dunkin' satisfies each of these prerequisites to obtaining preliminary injunctive relief.

A. There is More than a Substantial Likelihood that Dunkin' Will Succeed on its Claim of Infringement.

Defendants' intentional and continuing use of the Dunkin' Marks at the Infringing Location despite having no legal or equitable right to do so, establishes a more than substantial likelihood that Dunkin' will prevail on its claim of infringement. It is important to note that it is presumed that Dunkin' will suffer irreparable harm absent injunctive relief,[1] and that Defendants will not suffer any harm from injunctive relief.[2] Therefore, the burden of proof for Dunkin's likelihood of success argument should be reduced accordingly. A-Copy, Inc. v. Michaelson, 599 F.2d 450 (1st Cir. 1978); A.W. Chesterton Co. v. Chesterton, 907 F. Supp. 19, 22 (D. Mass. 1950); Clark, Inc. v. Resnick, 219 U.S.P.Q. (BNA) 619, 1982 U.S. Dist. LEXIS 10302, *20-21 (D.R.I. 1982) ("Apart from the fact that damages due to loss of sales are difficult to establish by reason of the loss of specific sales, there is the immeasurable loss of Plaintiff's marketing image, and misappropriation of Plaintiff's good will, for which no amount of dollar loss can be adequately calculated, and which would not, in any event be fair, compensation.").

Defendants' unauthorized use of the Dunkin' Marks clearly violates sections 32, 43(a), and 43(c) of the Lanham Act. For a violation of section 32 of the Act, Dunkin' must demonstrate that: (1) the marks are valid and legally protectable; (2) it owns the marks; and (3) defendants' use of the marks to identify goods or services is likely to create confusion concerning the origin of the goods or services.[3] The Nexxus Products Co. v. CVS New York, Inc., 188 F.R.D. 11, 14-15 (D. Mass. July 8, 1999); Polymer Tech. Corp. v. Mimran, 37 F.3d 74,

[1] See infra at § I.B.

[2] See infra at § I.C.

[3] Section 32, 15 U.S.C. § 1114(l)(a), provides, in pertinent part, that:

(1) any person who shall, without the consent of the registrant -

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distributions or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive. . . shall be liable in a civil action by the registrant.

78 (2d Cir. 1994); Opticians Ass'n of Am. v. Independent Opticians of Am., 920 F.2d 187, 192 (3d Cir. 1990); Schroeder v. Lotito, 577 F. Supp. 708, 718 (D.R.I. 1983).

A violation of section 43(a), which prohibits a false designation of the origin of goods or services, regardless of whether the misrepresentation involves registered marks, requires a showing that: (1) defendant has made false or misleading statements as to its own product or that of another; (2) there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) the deception is material in that it is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury, including declining sales and a loss of good will. See Lipton v. The Nature Co., 71 F.3d 464, 473 (2d Cir. 1995); American Home Prods. Corp. v. Johnson & Johnson, 577 F.2d 160, 165-66 (2d Cir. 1978). Lastly, Section 43(c) of the Lanham Act prohibits a person from using another's famous mark in commerce so as to cause dilution of the distinctive quality of the mark. 15 U.S.C. § 1125(c); I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 48 (1st Cir. 1998); see also, Hormel Foods Corp. v. Jim Henson Prods., Inc., 73 F.3d 497, 507 (2d Cir. 1996) ("[t]he sine qua non of tarnishment is a finding that plaintiff's mark will suffer negative associations through defendants' use"); see generally 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 24.13[1][a] (3d ed. 1995).

It is undisputed that Dunkin' owns its trade names and service marks and that those marks are valid and legally protectable. All the Dunkin' Donuts® service marks that Defendants are currently infringing have been registered on the principal register of the United States Patent and Trademark Office. (Verified Complaint ¶ 11.) Such registration is prima facie evidence that Dunkin' owns the marks and has an exclusive right to their use. See 15 U.S.C. § 1115(a).

It is also clear that Defendants have no right whatsoever to promote their goods or services using the Dunkin' Marks. Defendants are nothing more than would-be Dunkin' Donuts franchisees. Indeed, when confronted by Messrs. Wilson and Jay, Mr. Aughinbaugh openly admitted that Defendants are not an authorized Dunkin' Donuts® quick service restaurant. (Verified Complaint ¶ 26.) Having never obtained any right to use the Dunkin' Marks, Defendants' use of them is a per se violation of the Lanham Act.

There is also a substantial likelihood that Defendants' use of the Dunkin' Marks to promote patronage at the Infringing Location causes confusion among the public -- the principal element of a trademark infringement claim under the Lanham Act.[4] There can be no dispute that Defendants deceived customers into believing that the Infringing Location, which displays many of the Dunkin' Marks, is affiliated with Dunkin'. (Verified Complaint Exs. A and B.) Indeed, the confused customer who entered the Infringing Location while Messrs. Wilson and Jay spoke with Mr. Aughinbaugh is direct evidence of public confusion and the harm that Dunkin' is suffering as a result of such confusion. (Verified Complaint ¶ 24.) The misrepresentation of the Infringing Location as an Dunkin'-affiliated business is material and likely to continue influencing the decisions of prospective patrons.

Dunkin' is also likely to prevail on its claim under Section 43(c), as Defendants' association of the Dunkin' Marks with the Infringing Location is tarnishing and will continue to tarnish Dunkin's goodwill and business reputation. Here, Defendants have never undergone Dunkin' franchise training and do not have access to Dunkin's quality standards. In short, they have no idea how to operate a Dunkin' franchise properly, as evidenced by their use of a plastic

---

[4] Conduct that violates section 32 of the Lanham Act (unauthorized use of registered marks) also violates Section 43 of the Act (false designation of origin). In this regard, it has been observed that "the same facts which substantiate an action for trademark infringement under § 32 will make out an action for false designation under § 43." Cuisinarts, Inc. v. Robot-Coupe Int'l, 509 F. Supp. 1036, 1042 (S.D.N.Y. 1981) (citing Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc., 510 F.2d 1004, 1010 (5th Cir.), cert. denied, 423 U.S. 868 (1975)).

water cooler allegedly holding spring water. (Verified Complaint Ex. B.) Accordingly, even if some of the customers may not be confused by Defendants' infringing use of the Dunkin' Marks, there remains a likelihood that those customers will draw a negative impression from the association between the Dunkin' Marks and the services offered by defendants that have not been certified to meet Dunkin's requirements. That negative association will tend to dilute the distinctive qualities that the Dunkin' Marks enjoy. See, e.g., Hormel Foods, 73 F.3d at 507; Academy of Motion Pictures Arts & Sciences v. Creative House Promotions, Inc., 944 F.2d 1446, 1457 (9th Cir. 1991) (construing California anti-dilution statute). Given Defendants' clear misuse of the Dunkin' Marks --- Dunkin's authenticity seal ---it is highly likely that Dunkin' will succeed on its claim that Defendants' unauthorized use of its registered marks violates sections 32 and 43 of the Lanham Act. Schroeder, 577 F. Supp. at 717-20 (finding trademark violation based on similar, but not identical, union "bug" due to confusion concerning actual union sponsorship).

It is for these same reasons that Defendants cannot benefit from the "first sale" defense. See Prestonettes, Inc. v. Coty, 264 U.S. 359 (1924) (establishing first sale defense to trademark claims). To qualify for the defense, a putative infringer must re-sell the product in an identical form as he purchased it, i.e., the marked goods cannot be materially different from those sold by the trademark owner. See Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc., 982 F.2d 633, 635 (1st Cir. 1992) ; Brilliance Audio, Inc. v. Haights Cross Commc'ns, Inc., 474 F.3d 365, 370 (6th Cir. 2007) (collecting cases). Here, Defendants are not only selling a different product from what they purchased, brewed coffee instead of bulk coffee, but are preparing the coffee in a manner inconsistent with Dunkin's established quality standards for preparing and selling brewed coffee. (Verified Complaint ¶ 23.) As Dunkin' has no ability to control the manner in

which Defendants prepare and sell their coffee, which is materially different from the manner in which Dunkin' proscribes that coffee be prepared and served, the first sale defense is unavailable to Defendants. See Societe Des Produits Nestle, S.A., 982 F.2d at 635, 638 ("[T]he unauthorized importation and sale of materially different merchandise violates Lanham Act section 32 because a difference in products bearing the same name confuses consumers and impinges on the local trademark holder's goodwill presentation, variety, composition, and price.") (citations omitted).

B. Dunkin' Will Suffer Irreparable Harm in the Absence of a Preliminary Injunction.

Trademark infringement irreparably harms the trademark owner's goodwill and business reputation because of the public's association of its mark with non-identical goods or services. That is so because the trademark owner loses control over its goodwill and reputation while its marks are being misused by the infringing party. See, e.g., Church of Scientology, 794 F.2d at 43 (the "unauthorized use of a mark by a former licensee invariably threatens injury to economic value of the goodwill and reputation associated with a licensor's mark"); Opticians Ass'n, 920 F.2d at 195 (grounds for finding irreparable injury include "loss of control of reputation, loss of trade and loss of goodwill"); S&R Corp., 968 F.2d at 378 ("[l]ack of control amounts to irreparable injury"). As the First Circuit has observed, "[f]ew harms are more corrosive than the inability of a trademark holder to control the quality of bogus articles thought (erroneously) to derive from it." Hypertherm, Inc. v. Precision Prods., Inc., 832 F.2d 697, 700 (1st Cir. 1987); Schroeder, 577 F. Supp. at 715 (holding that trademark owner must maintain ability to control mark to protect owner's reputation in the marketplace).

Here, Dunkin' has shown that Defendants have impermissibly used the Dunkin' Marks in association with their operation of the Infringing Location in a way that does not meet Dunkin's standards. This situation is a textbook case of irreparable harm for two reasons. First, the

unauthorized use of a trademark alone is dispositive of the infringement issue. Dunkin' Donuts, Inc. v. Gav-Stra Donuts, Inc., 139 F. Supp. 2d 147, 158 (D. Mass. 2001). Therefore, if this Court finds that trademark infringement has occurred, Dunkin' has suffered irreparable harm as a matter of law. See Concrete Mach. Co., 843 F.2d at 611 (irreparable harm presumed where copyright infringement is shown); Church of Scientology, 794 F.2d at 44 ("a licensor that establishes infringing use and consumer confusion in a trademark suit brought against its former licensee has proved irreparable harm as a matter of law"); S&R Corp., 968 F.2d at 378 ("trademark infringement amounts to irreparable injury as a matter of law").

Second, the confusion to the public created by Defendants' misrepresentations also presents the likely threat of irreparable injury to Dunkin'. The most obvious type of injury is the confusion caused when a prospective Dunkin' patron chooses, based on Defendants' misrepresentation, to purchase coffee from Defendants (instead of an authorized Dunkin' restaurant) and never realizes that Defendants' Infringing Location is, in fact, not affiliated with the Dunkin' System. That type of consumer confusion is precisely the harm that the Lanham Act and its injunctive remedies are designed to cure and which Dunkin' has established is occurring. See S&R Corp., 968 F.2d at 378 ("[i]rreparable injury can also be based on the possibility of confusion") (citation omitted). Accordingly, Dunkin' has shown that it will be irreparably harmed without preliminary injunctive relief.

C. The Balance of Hardships on the Respective Parties Favors Issuance of Injunctive Relief.

The settled authority is that the equities in the case of trademark infringement favor granting preliminary injunctive relief. See, e.g., S&R Corp., 968 F.2d at 378; Opticians Ass'n, 920 F.2d at 195; Beacon Mut. Ins. Co. v. OneBeacon Ins. Group, 376 F. Supp. 2d 251, 265 (D.R.I. 2005) ("[A]n injunction is the standard remedy in unfair competition cases [pursuant to

the Lanham Act].") (internal quotation marks and citation omitted). In United States Jaycees v. Philadelphia, 639 F.2d 134 (3d Cir. 1981), the Third Circuit explained that:

> Protection of infringers is not a purpose of the Lanham Act. On the contrary, the Act's objective is the protection of the trademark and the public. Thus, we hold that the avoidance of confusion to the infringer's interests cannot support an order permitting the continued use of the trademark . . . .

Id. at 142. In this case, there is *no* harm to Defendants (let alone any irreparable harm) if the court preliminarily enjoins their continued infringement of the Dunkin' Marks, because they have no right to use the Dunkin' Marks. Given Dunkin's demonstration of irreparable harm and no harm to defendants, the balance of equities strongly favors the granting of preliminary relief.

D. The Public Interest Will be Served by an Injunction Prohibiting Defendants' Use of the Dunkin' Marks.

Granting a preliminary injunction here will advance the Congressional policy of protecting the public against deception or confusion. Church of Scientology, 794 F.2d at 44; Bill Blass, Ltd. v. Saz Corp., 751 F.2d 152, 156 (3d Cir. 1984) ("Congress has in the Trademark Act made the policy determination that the public interest is advanced by recognition of property interests in trademarks. Thus the public interest is advanced by preventing the erosion of the value of such interests."). In a case involving the continued use of a trademark by an ex-licensee, the Second Circuit stated that the public interest was harmed from the probability of consumer confusion arising out of the concurrent use of a trademark because the ex-licensee's use "confuses and defrauds the public." Church of Scientology, 794 F.2d at 44; accord Burger King Corp. v. Mason, 710 F.2d at 1493; United States Jaycees, 639 F.2d at 142.

Here, the injury to the public is equally patent. Defendants have promoted their service to the public as being associated with Dunkin' when the reality is that they have no relationship with Dunkin' whatsoever. Unlike an ex-franchisee who might argue his right to use certain marks was improperly terminated, Defendants have no such rights and never had them. Unless

Defendants are enjoined from continuing to misuse Dunkin's intellectual property rights, the public will continue to be confused and misled by Defendants' conduct, all to the detriment of Dunkin's intellectual property rights. A preliminary injunction will vindicate the public interest as expressed by Congress in the Lanham Act.

## CONCLUSION

For all the forgoing reasons, Dunkin's motion for a temporary restraining order and/or preliminary injunction should be granted in all respects.

Plaintiff,

DD IP HOLDER, LLC

By its attorneys,

Jeffrey S. Brenner (#4369)
NIXON PEABODY LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel: (401) 454-1000
Fax: (401) 454-1030
E-mail: JBrenner@nixonpeabody.com

Dated: May 30, 2007