Shell Food Mart
10 Ten Rod Road
North Kingstown, RI 02852
Voice/Fax 401-294-2616

Karl Aughinbaugh
General Manager
Cell 401-212-0465
kauggy@aaahawk.com

The Honorable Judge Smith
United States District Court
District of Rhode Island
C.A. No. 07-201/S

Your Honor,

After having received Jeffrey Brenner's (of Nixon Peabody LLP) motion, I decided that it was necessary to write you and give you an update in response to his inaccurate representations of my actions to date.

On Thursday evening, following our discussion in your chambers, I added temporary Disclaimer signs to my existing signs inside the building. On all of the 8.5" x 11" signs, I added 2" x 4" stickers with the same wording as on my large disclaimer sign. I even removed the white space so that a larger font could be used. I also added 2" x 2" disclaimer signs above the 4" x 5" coffee pots signs. Dunin' Donuts cups, and sugar packets were removed as well.

On Friday morning, I received a call from Mr. Brenner. I was surprised to hear from him as you had asked him not to contact me directly and I told him as much. His response was basically that as the meeting was held in chambers and your instructions were not a court order, he did not have to follow them. He said he was going to come by to meet with me.

I decided that since he felt that it wasn't necessary to follow your instructions, I would put the Dunkin Donuts cups back out, with a twist. I added a 1" x 4" sticker to every cup with the full text of my disclaimer.

At about 10:30, Cathy Stickney called the law firm. She spoke with Mr. Brenner's secretary and left a detailed message on how to go about contacting her. The secretary attempted to transfer Cathy, and she was hung up on. She did not take kindly to this and did not call back.

At about 11:30 a man came into the store wearing dark sunglasses. He looked familiar, but I could not tell who he was. He did not tell me who he was, but asked to speak with me outside, and I responded that I was the only employee working, but if it slowed down, I would meet him outside. He took pictures of the interior and exterior of the building and of my signs. He then waited outside. It stayed busy, and

at 12:00 the man reentered the store and said he couldn't wait any longer and that he was leaving.

At 2:00 I called Mr. Brenner and asked when he was coming down. He said that he was already here this morning. I asked if he was the man in the dark sunglasses. He said that he was. I asked why he didn't announce himself when he came into the store. He had no response. I asked if he was going to come back to talk to me. He said that he had already seen enough. I asked what he meant by that? He said that there were no disclaimers up. I responded by saying that the interior signs had temporary disclaimers, but that I needed to obtain some water proof paper and get access to a laser printer to make the permanent disclaimers and exterior signs. He said that I still had Dunkin Donuts cups and mugs out. I asked if he looked at those cups closely. He did not respond. I said that I was doing everything within my power to follow your instructions, but that these things take time. He responded something to the effect of why bother, the judge's instructions mean nothing because there was no court order.

On Saturday I called David Wilson, the Dunkin Donuts Representative that I had been working with. He asked how things went in court and I explained your instructions, and I also told him what the lawyer said about the mugs. He said that selling the mugs was not a problem as I had bought them at retail. He also said that my employees could even wear the hats if they wanted to. He compared it to buying red sox merchandise and re-selling it at retail.

On Sunday I called Mr. Wilson again. I asked him to come down on Monday so we could talk. He said he would call me in the morning and let me know what time he'd be in.

On Monday Mr. Wilson did not call. I left him a voicemail at 2:00. No response. I called again at 4:00 and he said that he could no longer talk to me as the matter was being handled by legal.

I received a call from my Shell Representative, Blake Littauer, and he said that Dunkin Donuts had contacted him and said that I was breaking the all kinds of laws by selling their coffee. I explained that I went to court on Thursday, I was following the Judge's instructions, and that everything was fine here. He was still upset, and we ended the conversation on a bad note.

On Monday afternoon I received a letter via courier with a copy of the law firm's urgent request for a hearing. In this letter, they made

accusations that are entirely false regarding my actions. I will speak to this later in this letter.

As it was taking too long for the exterior signs to be made, Monday Evening I purchased a color laser printer, all the necessary toner, waterproof paper, etc. (at a cost of $1,200) so that I could make the signs myself. I printed new disclaimer signs, and in response to Mr. Brenner's complaints in the letter I received, I made them much larger. I added 1/3 of a page disclaimers to all of my 8.5" x 11" signs. I also added several full page disclaimers, and added 1/3 size disclaimers to the coffee pots.

I called Edward Jay of Dunkin Brands Loss Prevention and asked if there was any way that we could discuss a remedy to this situation. He responded that he could not discuss the matter with me as it was in legal's hands. I did mention my disgust at the lack of productive communication from their counsel.

On Tuesday morning I received a call from US District court asking if I was available to come to court on Friday for a hearing. I said that I can, but that I would like to contact the judge. She recommended that I write this letter and fax it to her and she would take care of it.

A courier attempted to deliver a copy of the motion to Cathy Stickney's address here in North Kingstown. The door was answered by one of Cathy's tenants, and the courier made delivery to him. This letter was UNSEALED.

I was very angry about this and called Mr. Brennan and told him how unprofessional I thought this was. He said that he was not responsible for the fact that the envelope was unsealed and that currier services can be undependable. He also said that he was going to come down on Wednesday at 2:00 to see the new signage.

I feel that this emergency meeting on Friday is unnecessary because I am following your instructions (and in some cases going above and beyond), and am still willing to meet any demands made by Dunkin Donut's counsel as long as they are reasonable. It is a great inconvenience to come to court, as I am trying to run my store, and meet their demands, and deal with their wasting my time, and preparing for the hearing on June 19. It is not easy to find relevant case law when you are not a lawyer and do not have access to legal resources. Not to mention the fact that my wife is going in for surgery

on Wednesday, and one of my employees is taking time off to tend to his wife who has cancer.

I feel as though my coming to court on Thursday on such short notice should count for something. I am taking this very seriously, and I don't feel that neither Dunkin Donuts nor their counsel is doing the same. Their wild accusations are out of line. I need time to prepare my defense. I am still learning what I need to do to defend myself in this case. I need time to contact witnesses, sort and catalog evidence (approximately 300 hours of video currently residing on hard drives in a safe deposit box), etc. I feel that June 19 may not give me enough time with the way this law firm is wasting my time. I feel that they are intentionally trying to bring me to court on Friday so that I do not have enough time to prepare. Mr. Brenner actually told me to give him my hard drives and surveillance tapes so that he could bring them to court for me. I declined this offer, as I have not had time to make copies, nor go through this video myself.

I feel that July 15th would be more realistic for me to prepare an adequate defense. I don't know how they expect me to be ready by this Friday. Thank you for taking the time out of your busy day to consider my feelings on this matter.

Sincerely,

Karl (Auggy) Aughinbaugh

on Wednesday, and one of my employees is taking time off to tend to his wife who has cancer.

I feel as though my coming to court on Thursday on such short notice should count for something. I am taking this very seriously, and I don't feel that neither Dunkin Donuts nor their counsel is doing the same. Their wild accusations are out of line. I need time to prepare my defense. I am still learning what I need to do to defend myself in this case. I need time to contact witnesses, sort and catalog evidence (approximately 300 hours of video currently residing on hard drives in a safe deposit box), etc. I feel that June 19 may not give me enough time with the way this law firm is wasting my time. I feel that they are intentionally trying to bring me to court on Friday so that I do not have enough time to prepare. Mr. Brenner actually told me to give him my hard drives and surveillance tapes so that he could bring them to court for me. I declined this offer, as I have not had time to make copies, nor go through this video myself.

I feel that July 15th would be more realistic for me to prepare an adequate defense. I don't know how they expect me to be ready by this Friday. Thank you for taking the time out of your busy day to consider my feelings on this matter.

Sincerely,

Karl (Auggy) Aughinbaugh

6/6/2007 TIME 2:53