UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DD IP HOLDER LLC,<br><br>Plaintiff,<br><br>v.<br><br>EARL STICKNEY, CATHY STICKNEY, KARL AUGHINBAUGH AND XYZ, INC.<br><br>Defendants. | C.A. No. 07-201 S |

MEMORANDUM AND ORDER

William E. Smith, United States District Judge.

Plaintiff DD IP Holder LLC ("Dunkin'") moves for a temporary restraining order and/or preliminary injunction enjoining the operators of a Shell gasoline station franchise from using and displaying Dunkin's trademarks, service marks, and logos. Karl Aughinbaugh (a/k/a/ "Auggy"), the day-to-day manager of the accused location, appearing pro se,[1] has objected, and purports to do so on behalf of Earl Stickney, Cathy Stickney, and XYZ Corp.[2] At a

[1] The Court has repeatedly and unsuccessfully advised Auggy to seek legal counsel.

[2] Earl and Cathy Stickney, allegedly divorced and living (separately) out of state, were served with process after some delay retrieving their contact information from Auggy. However, to date, they have failed to secure legal counsel or otherwise participate in this litigation in any way. XYZ Corp. appears to be the company through which Earl or Cathy, or both, operate the gas station; it also is unrepresented.

conference held on May 31, 2007, the Court orally ordered Auggy to remove all large signs advertizing Dunkin' Donuts, post disclaimers stating that the location was not an authorized Dunkin' Donuts franchisee, and remove various Dunkin' Donuts paraphernalia from the location, pending a hearing on preliminary injunction. On June 4, 2007, Dunkin' requested an emergency hearing to address Auggy's failure to comply with the Court's temporary order and to seek a preliminary injunction protecting its marks. The Court held an evidentiary hearing on June 8, 2007, and took the matter under advisement. After careful consideration, the Court will grant Dunkin's request for a preliminary injunction in the manner prescribed below.

To obtain a preliminary injunction, Dunkin' must satisfy four conjunctive elements:

> (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.

Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996). Of these four factors, the most important is the first. See Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993) (describing the likelihood of success as the "sine qua non" of the four-part test). This is particularly true in trademark cases because the resolution of the other three factors will in large

part depend on whether Dunkin' is likely to establish infringement. See Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 115 (1st Cir. 2006) (noting the public policy in favor of protecting trademarks against infringement); I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 33 (1st Cir. 1998) (holding that irreparable harm may be assumed if success on the merits is likely); United States Jaycees v. Philadelphia, 639 F.2d 134, 142 (3d Cir. 1981) (observing that the Lanham Act was not designed to protect the infringer from hardship).

Dunkin' may satisfy its burden in this respect under several infringement theories. For example, Dunkin may establish that it has a valid, protectable mark, and that Auggy's use of that mark is likely to cause confusion among consumers. See 15 U.S.C. § 1114(1)(a) (often referred to as § 32 of the Lanham Act).[3] Similarly, Dunkin may establish the false designation of the origin

---

[3] In pertinent part, 15 U.S.C. 1114(1)(a) provides:

> (1) Any person who shall, without the consent of the registrant--
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . .
>
> . . . .
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided.

of goods, regardless of whether the misrepresentation involved registered marks. See 15 U.S.C. § 1125(a)(1)(A) (§ 43(a) of the Lanham Act); Flynn v. AK Peters, Ltd., 377 F.3d 13, 19 (1st Cir. 2004) (observing that, as under § 32, consumer confusion is the key inquiry in § 43(a) cases).[4] Or, Dunkin' may establish the dilution of its famous mark by blurring or tarnishment, regardless of whether the infringer's use of the mark causes confusion. See 15 U.S.C. § 1125(c) (§ 43(c) of the Lanham Act).[5]

---

[4] In pertinent part, 15 U.S.C. § 1125(a)(1)(A) provides:

> (a) Civil action
>
> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, . . . .
>
> . . . .
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

[5] Section 1125(c)(1) of Title 15 of the United States Code provides:

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through

This writer need go no further than the first example above. The parties do not dispute that Dunkin' has a valid, protectable mark, and that Auggy (or any of the Defendants for that matter) is not licensed to use or display the mark. Also, the undisputed facts demonstrate that Auggy's use of the mark is likely to confuse consumers into believing that the gas station's coffee operation is affiliated with Dunkin'. The infringing location has several signs (inside and outside) that display the Dunkin' Donuts logo (on the gas pumps, the building itself, the coffee dispensers, the overhead menu, and one especially large sign above the self-service center); Dunkin' Donuts cups adorn the Shell price sign (under which is a scarecrow-like figure wearing a Dunkin' Donuts hat and holding a Dunkin' Donuts cup); and the self-service center offers complimentary straws, napkins, and disposable cups, all displaying the Dunkin' Donuts mark. These facts give rise to a likelihood of confusion that would trigger liability under the Lanham Act.

However, the sale of authentic goods, such as Dunkin' Donuts travel mugs, is a different matter. Generally, "trademark law does

---

acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

not apply to the sale of genuine goods bearing a true mark, even if the sale is without the mark owner's consent." Shell Oil Co. v. Commercial Petroleum, Inc., 928 F.2d 104, 107 (4th Cir. 1991); see also Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc., 982 F.2d 633, 638 (1st Cir. 1992) (recognizing the rule as one of general application, but not applicable under the facts of the case). Marked goods will be considered "genuine," and thus available for resale without infringement, when they do not contain or could not potentially contain "a latent product defect due to the unauthorized distributor's failure to observe the manufacture and mark owner's rigorous quality control standards." Matrix Essentials, Inc. v. Emporium Drug Mart, Inc., of Lafayette, 988 F.2d 587, 591 (5th Cir. 1993) (collecting cases). From what this writer can tell, the challenged Dunkin' Donuts travel mugs Auggy sells are undamaged; also, selling the mugs themselves does not require the application of quality-control procedures the absence of which might lead to a product defect.[6] Consequently, in the

---

[6] It is not clear how Auggy acquired the mugs. To the extent that this enters the infringement analysis, the Court will assume, pending trial, that the mugs were acquired lawfully. Cf. Societe Des Produits Nestle, 982 F.2d at 638 (holding that the unauthorized importation of an otherwise "genuine" product rendered it "counterfeit" and thus subject to prohibition under the Lanham Act).

end, none of Dunkin's infringement theories are likely to prevent Auggy from selling the mugs.[7]

Because Dunkin' has shown a likelihood of success on the merits, and because, as explained above, the other factors collapse into that finding, Dunkin's motion is GRANTED as follows:

(1) Defendants must remove all signs, posters, flags, and so-called "cling-ons" displaying Dunkin's trademarks, service marks, and logos, regardless of whether the image is an original, a digital replica of a Dunkin' Donuts coffee bag, or a home-made advertizement;

(2) Defendants must remove all straws, napkins, disposable cups, and other complimentary items bearing Dunkin' Donuts marks;

(3) However, Defendants may continue to sell genuine goods bearing a true mark, such as but not limited to Dunkin' Donuts travel mugs, hats, and tea bags (see <u>infra</u> note

---

[7] This conclusion would apply equally to the sale of Dunkin' Donuts hats, one of which was identified in an exhibit but not specifically challenged by Dunkin' in its motion. Also, this conclusion would seem to apply to the sale of Dunkin' Donuts tea bags, whether they are sold simply as tea bags (by virtue of being a genuine goods bearing a true mark) or in steeped tea (by necessary extension of Dunkin's concession, discussed below, regarding the sale of brewed Dunkin' Donuts coffee). However, if consumers cannot purchase Dunkin' Donuts tea bags outside of Dunkin' Donuts franchises, like (this writer assumes) Dunkin' Donuts straws and napkins, this conclusion may change. To the extent that this becomes an issue, it can await trial.

7), provided that these goods are not advertized in a fashion that would contradict this order;

(4) Also, pursuant to the representations of Dunkin's counsel during the May 31 conference, and in the absence of any objection during the June 8 hearing, Defendants may continue to sell brewed Dunkin' Donuts coffee, provided that the coffee is not advertized in a fashion that would contradict this order (for example, Defendants may advertize the fact that they sell brewed Dunkin' Donuts coffee as long as they do not do so using Dunkin's font or colors);

(5) The Court takes no position on Auggy's choice of paint (on the sidewalks, external or internal walls, et cetera); to the extent that it becomes an issue, it can await trial.

It is so ordered.

WESmith

William E. Smith
United States District Judge

Date: 6/11/07