UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DD IP HOLDER LLC<br><br>Plaintiff,<br><br>v.<br><br>EARL STICKNEY, CATHY STICKNEY, KARL AUGHINBAUGH AND XYZ, INC.<br><br>Defendants. | C.A. No. 07-201/S |

**DEFENDANT KARL AUGHINBAUGH'S RESPONSE TO PLANTIFF'S MOTION TO COMPEL ERADICATION OF MARKS FROM GAS STATION AND COMEL COMPLIANCE WITH COURT'S ORDER OF JUNE 12, 2007**

**AND**

**DEFENDANT KARL AUGHINBAUGH'S RESPONSE TO MEMORANDUM IN SUPPORT OF PLANTIFF'S REQUEST FOR AN EXPEDITED HEARING**

` The Plaintiff's motion to compel eradication of marks from gas station and compel compliance should be denied. I feel that the Plaintiff has no grounds for this motion. I respond, point by point, to their reasons as listed below:

1. I do not dispute this statement.

2. I dispute this statement. Cathy Stickney was not served with original process on June 6, 2007. Cathy Stickney's tenant was served with her copy of original process on June 5, 2007. Earl Stickney was not served with original process on June 5, 2007. Earl Stickney was served with original process on June 6, 2007.

3. I dispute this statement. I have complied to the best of my ability to comply fully with the court's order. I have refused to sign the settlement agreement set forth by the Plaintiff in Magistrate Judge Lovegreen's settlement conference because it contains additional requirements beyond the scope of the court's June 12 order, including

limiting our right to advertise to the public that I sell brewed Dunkin' Donuts coffee, and leaves several issues up in the air regarding current actions brought on by this case against us by third parties.

4. I do not dispute this statement, but would like to point out that Dunkin' Donuts franchisees pay Shell Oil Company to lease space in these gas stations, not the other way around.

5. I dispute this statement. It has been our goal from day one to sell brewed Dunkin' Donuts coffee in our establishment, sell genuine products purchased at retail from Dunkin' franchisees, and to advertise to the public that I brew Dunkin's coffee and sell genuine Dunkin' merchandise. I have represented our position on this to the court, and have complied to the best of my abilities with the court's orders. I decided to participate unofficially in the Cystic Fibrosis fundraiser. Upon Dunkin's request I immediately removed these fundraiser symbols while Messrs. Wilson and Brenner watched.

6. I dispute this statement. At the court's verbal request, I added disclaimer signs to all of our signage advertising coffee brewed with Dunkin' Donuts and Spring Water. At the court's written request, I replaced all of our signs with new signs clearly stating that our Self Serve Coffee is brewed with Dunkin' Donuts (not using Dunkin's colors or fonts) and Spring Water. At Dunkin's request, I again replaced all of our signs with the font sizes adjusted so that the height of Dunkin Donuts was slightly smaller than all of the other words on the signs. Also to alleviate concern from Dunkin's counsel, I removed all of our exterior signs to help facilitate a fair settlement agreement. Within 24 hours of the court's order, Dunkin's marks were not present in our station, with the exception of genuine merchandise offered for resale, and on our signs where I clearly state that I brew our coffee with Dunkin' Donuts coffee. I would also like to advise the court that Plaintiff and Plaintiff's counsel's idea of reasoning with us is to refuse to tell us why they

think I are not in compliance, misrepresent the facts to the court, and bring in third parties to threaten our livelihood to pressure us to settle on unfair terms.

7. I dispute this statement. The aquariums were in place prior to service of the court's order. One of the aquariums contained genuine merchandise offered for sale inside our establishment. Upon Dunkin's request I immediately removed these items from the aquarium while Messrs. Wilson and Brenner watched. The "scarecrow" (robot) was moved from the area by the price sign to the area at the front of the store at the time the aquariums were installed, and the Dunkin' Donuts cup he was holding was covered with a new sign advertising brewed Dunkin' Donuts coffee. The "multiple signs" were not added the day after service, they were changed to reflect the court's order that we are allowed to advertise to our customers that we sell brewed Dunkin Donuts coffee. The large sign on the corner of the building was removed and not replaced with a new sign advertising the coffee. Also in adherence with the court order, Dunkin' cups were removed from the coffee area and generic cups with stickers advertising that our coffee is brewed with Dunkin' Donuts and Spring Water were put in their place. Our purpose is to sell the brewed coffee, as it has been from day one.

8. I do not dispute this statement, except to say that I do think that it is very convenient that Dunkin' provides pictures of the establishment prior to the time that their request for additional changes are implemented, and that, were it not for Dunkin's relationship with Motiva Enterprises, this lease termination would not be in effect.

9. I dispute this statement. Dunkin' has not been required to police our compliance. Dunkin' was invited to come by the station by Defendant Karl Aughinbaugh to review the changes made to comply with the court's order and asked if any further changes would be necessary on several occasions. Each of Dunkin's requests for further change is carefully

considered and reasonable requests that are not contrary to the court's order and do not inhibit the operation of our business are completed in a timely manner.

10. I dispute this statement. The large sign advertises to the public that I sell brewed Dunkin' Donuts coffee. It is clearly stated in the court's order that this is allowed so long as Dunkin's fonts and colors are not used. Unless Dunkin' owns the Arial Rounded MT Bold font provided with Microsoft Office or is infringing on Shell Oil Company's trade dress by using red and yellow, I am not in violation of the court's order on this issue. This is true of every sign in place on the premises since the day after I received the court's order. In order to reduce the likelihood that our customers are confused, I moved our Dunkin' Donuts coffee beans that I offer for sale from the Plexiglas case prominently displayed above the coffee area (clearly visible from outside the store) to a new floor rack at the end cap of aisle four (not visible from outside the store, as it is clearly blocked by the ATM Machine and LCD Television against the window). The merchandise is stacked in the same fashion as all other merchandise offered for sale in the store. If the Plaintiff's reasoning was sound, our customers may also believe that we are affiliated with, and are sponsored by, Hostess, Frito Lay, Marlboro, Pepsi, Coca Cola, and Pepperidge Farms.

11. I dispute this statement. Dunkin' has taken the immovable position that the only way to resolve this dispute without going to trial is for us to agree not to advertise to the public that our coffee is brewed with their coffee beans. Dunkin' has inexplicably requested additional concessions from us in each settlement talk, now adding that I not be allowed to sell genuine merchandise. These two concessions are not in standing with the court's preliminary order, and it is my position that the outcome of a jury trial would be required to establish whether this is lawful. In the event that a jury was to establish that it is lawful for us to brew their coffee and advertise it as

such, I could continue to sell the coffee for a number of years. Further, I would expand this idea to encompass other retail locations with whom I maintain business relationships. This figure was calculated at approximately $3.5 million dollars. I believe it is reasonable to use this loss of potential income as a starting point in negotiations for settlement involving us ceasing conduct of which the legality has yet to be determined. Dunkin' has also, against the verbal order of the court, involved Motiva Enterprises (Shell Oil Company) in this lawsuit. It is reasonable that Karl Aughinbaugh ask Dunkin' to assist him in collecting unpaid debts and correct wrongs done him in the past and currently being done at the urging of Dunkin' Donuts (approximately $500,000 and making me the official Shell Dealer for the 10 Ten Rod Road location, and to buy the property out of the 3.5 million dollars), in exchange for Dunkin's "bringing down the house of cards" by brining in a third party with whom a pattern of discrimination and contempt against the defendants exists. Shell's past discrimination has cost defendant Karl Aughinbaugh an incalculable price over the years with the businesses they have ruined. The wire instructions were a light hearted attempt to convince Dunkin' Donuts that the settlement proposal was offered in all seriousness. Dunkin' has, as of yet, not budged from their stance that not having to pay legal fees and damages is payment enough. I contend that even if a jury were to find that I am liable for legal fees and damages for trademark infringement, they may very well conclude that I am allowed to continue as I am right now. It is my stance that the potential gains may outweigh the risks, and if Dunkin' doesn't want to take the risk of a jury's findings, they should compensate us. I would like to reiterate that our proposal was a starting point for negations, and that Dunkin' continues to ask for more in each meeting without giving an inch. I have justified these numbers on several occasions to Dunkin' Donuts and their representatives.

12. I dispute this statement. I have high regard for the United States Court System, and it fairness in resolving disputes between parties. I may not be knowledgeable of procedural matters, but this is to be expected as I am not an officer of the court.

13. I dispute this statement. My insistence that I be allowed to use the Dunkin' name has a basis in common sense. I buy the coffee and genuine merchandise from them at retail prices. They gladly sell it to us with no limitations verbally or in writing. I brew their coffee, and advertise the sale of this brewed coffee to the public. I also resell the genuine merchandise. If Dunkin' does not want their product brewed and advertised that it is brewed, why do they sell it? There is no use for their product other than to finish it according to the instructions on the bag. Oscar Meyer does not sue individuals for selling their cooked hot dogs.

14. I dispute this statement. As stated in our response to point 10, if the Plaintiff's reasoning was sound, our customers may be confused and believe that we are affiliated with, and are sponsored by, Hostess, Frito Lay, Marlboro, Pepsi, Coca Cola, and Pepperidge Farms. Not to mention that I have full page disclaimers posted inside AND outside the store to reduce the likelihood that customers are confused. Insofar as disruption of their established relationships, should Dunkin' Donuts not have considered this before they started selling their coffee beans and merchandise to the public at retail? Patrick Finnegan's report is biased towards Dunkin's cause. Customer #2 is a long standing regular customer, and contrary to Mr. Finnegan's accusation, the cashier (Karl Aughinbaugh's 16 year old son) did not coach his answers. After reviewing Mr. Finnegan's report, Customer #2 stated: "Fist of all, he asked leading questions. No to mention that he misquoted me. I specifically said that I did not know if you were authorized by Dunkin' Donuts to brew their coffee, and then asked why I would care either way! The questions were not asked as multiple choices, and were read

off of handwritten notes! Of course I was sarcastic with him. I've had better surveys from high school students." Had this survey been conducted by a neutral party and been performed in a scientific fashion, I would give more weight to Mr. Finnegan's report. In order to establish a survey to represent the population of North Kingstown (around 25,000), Mr. Finnegan would have had to sample a few more than 3 individuals. Defendant Karl Aughinbaugh asked him (and his partner) to leave as they seemed to be harassing customers, asking questions when the customers clearly wanted to just get in their cars and drive away. They also asked questions of several people who did not buy coffee, and the results of these surveys were not included in his report.

15. I dispute this statement. I have made every reasonable effort to reduce any possible confusion with Dunkin' Donuts franchisees. Our signs clearly state that I brew their coffee. I do not even claim to be selling Dunkin Donuts Coffee, only coffee brewed with Dunkin' Donuts. Any confusion on that wording is because of the way that Dunkin' markets both products under the exact same name. I have complied with the courts orders to further reduce the likelihood of any confusion to the best of our abilities. Dunkin's insistence that I be denied the right to sell coffee brewed with beans I purchased at retail and advertise the band name of the beans defies common sense. Dunkin's insistence that I not be allowed to sell genuine merchandise purchased at retail is contrary to established case law.

16. I dispute this statement. I brew our coffee by following the instructions provided by Dunkin' Donuts. These are the same instructions they provide to individuals (and businesses) who wish to brew the same "delicious tasting" coffee in their homes or offices. I use the same brand of commercial coffee brewer that they recommend (and sell on their website) for anyone brewing their coffee, and use spring water as they recommend for best results. Our customers realize that I am not a Dunkin' Donuts

franchise. Our signs clearly state that I brew their coffee. I do not even claim to be selling Dunkin Donuts Coffee, only coffee brewed with Dunkin' Donuts.

17. I dispute this statement. Identifying the name brand of the coffee that I brew and serve to our customers is not misappropriation of property. I am beginning to wonder of Dunkin' is flipping to random pages in their law books to find more things to accuse us of. If anyone has misappropriated property, Dunkin' has misappropriated their own property by using the same famous marks and trade dress that they charge their franchisees to use on products that they sell directly to the public (with no limitations anywhere on the product) which would enable this type of situation to arise in the first place.

18. I dispute this statement. I am buying the Plaintiff's coffee at full retail price (approximately $8.00 per pound) because it is one of the best coffees in the world. I am brewing this coffee using Spring Water at great expense (approximately $1.00 per gallon) because their instructions require this for best results. I do this because I want our customers to be satisfied with the quality of the coffee I serve and increase coffee sales and other sales. I advertise that I sell coffee brewed with Dunkin' Donuts for the same reason that I advertise that I sell Shell Gasoline. This is the high quality product that I sell, and I am proud to offer it to our customers.

19. I dispute this statement. The aquarium was in place before the order. At Dunkin's request I removed the genuine products offered for sale inside the station to reduce the likelihood of confusion. This display was intended to advertise products available for purchase. I had planned on adding Shell merchandise, but due to Shell's objection to the fish tanks themselves, I never did so. I take offense to Dunkin's accusation that I am trying to circumvent the order. My assurance (not "threat") was that I would continue to find ways to creatively promote my business.

Accordingly, the defendants respectfully request that the court find that I am complying with the court order, that the plaintiff's request be denied, and the plaintiff be ordered to stop harassing the defendants, that the plaintiff be ordered to stop attempting to coerce a settlement by using their relationship with Motiva Enterprises (Shell Oil Company), and that the plaintiff be ordered not to harass our customers with flawed surveys.